**SOUTHLAND INV. CO., Inc., v. MICHEL.**
**No. 4554.**

Court of Appeal of Louisiana. Second Circuit.

June 30, 1933.

Herold, Cousin & Herold and Malcolm W. Feist, all of Shreveport, for appellant.

Harry V. Booth, of Shreveport, for appellee.

TALIAFERRO, Judge.

Mrs. Lucille K. Michel obtained judgment, July 19, 1932, in the city court of the city of Shreveport against her tenant, the Triangle Machine Company, Limited, for past-due rent in the sum of $250. Her suit was filed July 7th. A fieri facias issued on this judgment in October following, and thereunder certain movable property in the possession of South-land Investment Company, Inc., was seized as the property of the defendant and promptly advertised for sale. The Southland Investment Company filed third opposition, claiming ownership of and title to these chattels through purchase from the Triangle Machine Company for the price of $277.16, and sued out a rule to show cause why a preliminary injunction should not issue to prevent the sale. The record does not show any trial of or further action concerning this rule. The third opponent prayed for judgment against Mrs. Michel and the city marshal, recognizing its ownership of the property seized, and for damages.

The marshal did not answer, but Mrs. Michel did. She admits seizure of the property at her instance, but denies that third opponent purchased same from Triangle Machine Company, but avers that it was conveyed to third opponent by the Triangle Machine Company by dation en paiement to satisfy a past-due note of the latter. She also avers that said dation en paiement of said chattels was made while the Triangle Machine Company was insolvent and at a time when she was creditor; that said dation en paiement was a fraudulent preference of the said company over its other creditors, and, for that reason, is subject to be set aside and annulled; that said Triangle Machine Company is unable to pay its debts, has no other property, and unless said fraudulent preference be set aside and annulled, she will be unable to collect her judgment against it.

As stated above, the record does not disclose the disposition made of the rule provoked by the third opponent, but presumably a preliminary injunction issued as prayed for, because the city judge, in passing on the case after taking of testimony on the merits, perpetuated "the writ of injunction herein issued," and enjoined the defendants (in the opposition) from proceeding with the sale of the property.

The opponent contends, and the lower court held, under authority of Majors v. Dennis, Sheriff, 35 La. Ann. 336, that Mrs. Michel, defendant in the third opposition, could not attack the title of the opponent to the seized chattels as fraudulent in her answer to the opposition, could not force that issue upon the court in that manner, and that she was relegated to a direct revocatory action on the question. Mrs. Michel appealed from this judgment. Southland Investment Company, by answer to the appeal, prays that the judgment be amended by granting the damages sued for and, recognizing it as owner of the property involved.

The lower court manifestly is in error in holding that a defendant in a third opposition wherein the title to personal property is involved cannot, by answer, tender the issue vel non of the fraudulent nature of the title set up by the third opponent. The right to do this is clearly granted by article 398 of the Code of Practice, as amended by Act No. 46 of 1886. This article, before being amended, directed that, in cases where the opposition had for its object the setting aside of an order of seizure as having been effected on property not owned by the defendant, but on the contrary owned by the opponent, it must be done by petition and citation, as in ordinary suits, and considered as a separate demand from the suit in which the order was granted. The 1886 act adds the following: "* * * Provided, that in all cases where personal property is seized upon mesne or final process, and is claimed by a third opponent, the seizing creditor may be allowed in his answer to the third opposition to allege and prove his title fraudulent, and the court shall try and decide the issue thus made."

This amendment specifically provides that, where personal property is seized and claimed by third opponent, the seizing credi-

tor has the right in his answer *to allege and prove his title fraudulent, and the court is bound to try and decide that issue.* This is exactly what the seizing creditor is seeking to do in this case. She alleges that the title asserted by the third opponent is fraudulent and the transfer to it a fraudulent preference as between the debtor's creditors.

The case referred to by the lower court was decided prior to the adoption of the 1886 amendment to article 398 of the Code of Practice (Act No. 46 of 1886). It does not reflect the law as it presently exists.

In First Nat. Bank of Ruston et al. v. Lagrone, 166 La. 626, 117 So. 741, 742, it was held (quoting syllabus) that: "Under Code Prac. art. 398, as amended by Act No. 46 of 1886, where the wife of a judgment debtor opposes the seizure and sale of stock certificates standing in her name, the seizing creditors have a right, in defense of her claim, to show that her title is simulated or fraudulent."

The same doctrine was laid down in Lahitte v. Frere, Sheriff, 42 La. Ann. 864, 8 So. 598, and in Whitney-Central Nat. Bank v. Sinnott, 136 La. 95, 66 So. 551, 556, the Supreme Court, after referring to many decisions rendered by it prior to the 1886 amendment, remarks: "These decisions, however, were all rendered before the passage of the Act No. 46 of 1886. The last of them was argued and decided at the January term, 1886. Thereafter, in Lahitte v. Frere, Sheriff, 42 La. Ann. 864, 8 So. 598, this court recognized the amendment of article 398 of the Code of Practice by the Act No. 46 of 1886, and held that a creditor could, on proper allegations, attach personal property in the possession of the vendee of the debtor, and could, in answer to a third opposition by the vendee claiming ownership, aver and prove the title to be fraudulent. *It was held that a resort to the revocatory action was not necessary in such case any more than in a case of simulation.*" (Italics ours.) Also, to same effect, is Bank of Baldwin v. Broussard, 10 La. App. 404, 119 So. 567.

The issues tendered by the answer to the petition of third opposition are that the Triangle Machine Company was insolvent when the dation en paiement by it to third opponent was made, and that that transfer was fraudulent. It is not alleged, nor proven, that the third opponent was in bad faith, nor actuated by fraudulent motives or purposes in accepting delivery to it of the chattels in satisfaction or payment of the note of the defendant. It is true, as alleged, that third opponent paid nothing for the property beyond canceling said note. The transaction was purely a dation en paiement.

"The giving in payment is an act by which a debtor gives a thing to the creditor, who is willing to receive it, in payment of a sum which is due." Civ. Code, art. 2655.

Article 2656 of the Civil Code provides that this form of contract is perfected only by delivery, and article 2657 states that from this distinction result consequences which are different in relation to the risk of the thing sold, etc., and article 2658 reads: "This difference gives rise to another in the effect of these contracts, in cases of the insolvency of the debtor. He may, although insolvent, lawfully sell for the price which is paid to him; *but the law forbids to give in payment to one creditor, to the prejudice of the others, any other thing than the sum of money due.*" (Italics ours.)

The questions of good faith, knowledge of insolvency of the debtor, and innocent motives on the part of the grantee in a dation en paiement from an insolvent debtor are not material to a correct determination of the legal status of such a transaction. Under the plain language of article 2658 of the Civil Code, quoted above, the insolvent debtor is inhibited to give his property to a creditor "to the prejudice of the others" (creditors). The natural sequel to the giving in payment by an insolvent to one creditor to discharge an unsecured obligation is injury and prejudice to the other unsecured creditors. Such act of necessity gives an unfair preference to the creditor thus favored, and, in the eyes of the law, amounts to legal and constructive fraud. The property of a debtor being the common pledge of all his creditors, it would be highly unjust and inequitable for one to be permitted to receive in payment any part of the assets of the common debtor in preference to other creditors. And, in this connection, the law does not require that fraudulent motives on part of the debtor, as a fact, shall be proved in order to strike with nullity a giving in payment by him. The act itself, which works prejudice and injury to other creditors, in legal contemplation superinduces constructive or legal fraud as a motivating cause of the transaction.

"The word fraud used in the foregoing article means any unfair preference which the debtor may give to one of his creditors over the others, *by selling or mortgaging to him a portion of his property for a debt existing before the contract.*" Civ. Code, art. 3360. (Italics ours.) Ventrilla v. Tortorice et al., 160 La. 516, 107 So. 390; Fishel v. Irwin, 132 La. 344, 61 So. 397; Lovell v. James A. Payne et al., 30 La. Ann. 511; Bullard v. Nattin, 18 La. App. 75, 137 So. 551; Civ. Code, art. 2658.

The case of Vasquez v. Romano et al., 175 La. 835, 144 So. 591, cited and relied on by the third opponent, does not support its contention. That was a revocatory action, purely and simply, to annul sales of real estate by the defendant debtor on the ground that they

were either fraudulent or simulated. The question of giving in payment was not involved. The court properly held that, to annul the sales attacked, it was necessary to allege and prove that the debtor was insolvent to the knowledge of the purchaser, "and that fraudulent sale was intended to, and did, injure plaintiff," citing articles 1970, 1971, 1984 of the Civil Code.

The right to institute a revocatory action is derived from article 1968 et seq., of the Civil Code, found under section 7 of chapter 3, "Of the Effect of Obligations" (book 3, tit. 4), the preamble to this section being, "What Contracts Shall be Avoided by Persons Not Parties to Them," while the rules governing the giving in payment are to be found in chapter 13 (book 3, tit. 7), articles 2655 to 2659 of the Civil Code. Article 2659 provides: "Except with these differences, the giving in payment is subjected to all the rules which govern the ordinary contract of sale."

But in those respects wherein there are differences or conflicts between the articles peculiarly applicable to the giving in payment and those applicable to other contracts treated by the Code, the former govern when dealing with the contract of giving in payment.

On the question of the solvency of the Triangle Machine Company when the dation was made, the testimony is rather meager and unconvincing. On October 31, 1932, an alias fieri facias issued on the judgment held by Mrs. Michel against it and was returned nulla bona. The marshal's return thereon inter alia recites that demand was made on Mrs. W. H. Phillips, its president, to pay the writ or point out property to levy on, and she declared the company had no money and that she knew of no property belonging to the company which could be seized under said writ. This case was being tried the day this execution issued, and was returned unsatisfied.

■ 'A return of nulla bona on a fi. fa. is prima facie proof of no property subject to seizure and of insolvency." Price v. Florsheim, 174 La. 952, 142 So. 135, 137; Lovell v. Payne, 30 La. Ann. 511; Wheeling Pottery Co. v. Levi & Co., 48 La. Ann. 780, 19 So. 752.

It is shown that the Triangle Machine Company, in addition to the debt owed by it to third opponent, had obligations outstanding amounting to $275, including Mrs. Michel's judgment. No other assets are shown save open accounts for labor done and material sold and furnished in the course of the company's business for two years previous to its collapse, amounting to $641.95, of which amount Mrs. Phillips alone testified, 70 per cent. was considered collectible. Before this case was tried, a subpœna duces tecum issued to the Triangle Machine Company and was served on Mrs. Phillips, as president. It commanded her to produce in court the cashbook, ledger, and journal of her company. She did not produce any of the books, and on trial of the rule she stated that she secured the list of bills (accounts) receivable from the company's "customer's ledger" then at her home. This ledger was not produced. She was unable to account for the whereabouts of the other records and books of the company, though she padlocked its place of business when it was abandoned, and retained the key until the marshal made a provisional seizure of the few assets left therein in the suit of Mrs. Michel for past-due rent. The books and records were not in the place when the seizure was made. The number, the amount, and the names of the persons owing the $641.96 were not given by Mrs. Phillips, and her evidence thereon is not corroborated by any one. Her husband was an officer of the company and doubtless was well acquainted with its affairs, but he did not testify in the case. Some of these accounts, it is admitted, are two years old, and no effort had been made to collect any of them for several months.

■ By being in insolvent circumstances, under article 1985 of the Civil Code, is meant " * * * that the whole property and credits are not equal in amount, at a fair appraisement, to the debts due by the party. And if he, who alleges the insolvency shows the amount of debts, it is incumbent on the other party to show property to an equal or greater amount. To prove the state of his affairs at the period of the contract, the debtor may, at the option of the plaintiff, be examined as a witness in the action for annulling the contract."

Under this article it is incumbent upon the creditor to show the liabilities of the debtor, and, when this has been done, it devolves upon the debtor to show "property to an equal or greater amount." In other words, the value of proven assets must equal or exceed liabilities.

■ Third opponent contents itself with the testimony of Mrs. Phillips on the value of the company's bills receivable, while other testimony was available to it. The fact that the books sought by the subpœna duces tecum were not produced, and the reason for not doing so not being satisfactorily explained, in conjunction with the failure to offer other testimony to corroborate that given by Mrs. Phillips concerning the value of these accounts, and other suspicious circumstances, casts discredit on her evidence on this question.

It is well known that open accounts of an insolvent concern have very little value as assets. Collection thereof is extremely doubtful and difficult in normal times. At present, collection of accounts due a failing company, especially those of long standing, is virtually an impossibility. The facts of this case do not, in our opinion, remove the accounts due

the Triangle Machine Company from the general rule.

We do not think third opponent has met and discharged the burden of proof required by article 1985 of the Civil Code, and that the Triangle Machine Company was insolvent when the dation en paiement was made. Injury to other creditors followed as a natural result.

In addition to the foregoing on the question of the solvency of the Triangle Machine Company, the resolution adopted by its board of directors on July 2, 1932, contains significant declarations reflecting then a feeling on the part of the board that the company could not pay its debts in full. This resolution is as follows:

"A meeting was called of the stockholders of the Triangle Machine Co., Inc., for the purpose of settling the accounts of the Triangle Machine Co., Inc., disposing of what equipment was free of debt, collecting outstanding accounts and winding up affairs in general. Mrs. Phillips made a motion that certain equipment, consisting of the following: * * *.

"And all cross belts for the shop to be sold to the Southland Investment Co., for $262.00 plus accumulated interest in consideration of a note held by the Southland Inv. Co., Mr. Overton seconded the motion. Motion carried.

"Mr. Overton made a motion that Mrs. Phillips be given authority to make this sale, also proceed with the collecting and paying of other accounts so far as the money would go. Mr. Phillips seconded the motion. Motion carried."

It will be noted that this resolution provides for the winding up of the company's affairs, disposing of its unincumbered equipment, collecting outstanding accounts, and the application of the collections towards payment of its obligations, excepting the note due third opponent, "so far as the money would go." Mrs. Phillips, the president, was authorized to do this. The giving in payment to third opponent was also authorized. The board of directors unquestionably entertained grave doubt as to whether enough accounts were collectable to pay in full the company's liabilities after the transfer to opponent of its unincumbered assets. After the lapse of nearly five months, nothing had been collected.

Another fact, which, standing alone has little probative weight on the question of insolvency, but, when considered in the light of the other evidence in the case, has material bearing on the question, is that the checks of the Triangle Machine Company before and at time of the transfer to opponent were daily dishonored by two banks in the city of Shreveport in which it carried checking accounts.

We think the case is with the seizing creditor, Mrs. Michel.

For the reasons herein assigned, the judgment of the lower court is annulled, reversed, and set aside, and the injunction herein issued is dissolved. There is now judgment in favor of Mrs. Lucille K. Michel decreeing the dation en paiement to Southland Investment Company, Incorporated, to be an illegal preference in favor of the grantee therein, and, as such, subject to be, and is hereby, annulled and set aside; the property described therein is decreed to belong to the Triangle Machine Company and the seizure thereof herein is recognized as legal and valid; the city marshal is hereby ordered to proceed with the sale thereof according to law. All costs of this opposition shall be paid by the Southland Investment Company, Incorporated.