153 So. 673

**SOUTHERN CASUALTY CO. v. ROSS et al.**

No. 31768.

Feb. 26, 1934.

P. M. Milner, of New Orleans, for appellants Fidelity & Deposit Co. of Maryland, Augustus G. Williams, and James B. Ross.

Sanders, Baldwin, Haspel & Molony and Rene A. Viosca, all of New Orleans, for appellees receivers of Southern Casualty Co.

LAND, Justice.

In May, 1919, the defendant, James B. Ross, purchased the property foreclosed on in this suit, and for the credit part of the purchase price executed a note for $10,000, secured by mortgage and vendor's lien on the property.

In March, 1927, the defendant, being then interested in the New Orleans Underwriters' Agency, which was doing business with the plaintiff, the Southern Casualty Company, and was indebted to it, made to the casualty company a continuing guaranty of the obligations of the agency company and, further to secure them, issued his note for $17,500 secured by mortgage on the property in question.

The mortgage for $17,500 was a second mortgage, to the knowledge of the officers of the Southern Casualty Company.

During 1929, defendant was required to refinance the note for $10,000 by the Canal Bank, which owned the note and had been carrying it for several years. He applied

to the Volunteer State Life Insurance Company for a loan, and was referred by that company to the Mortgage & Securities Company.

The latter company was unwilling to buy the note, but, acting for the insurance company, agreed to make defendant a new loan for the same amount, secured by mortgage on the property, for the purpose of taking up the note.

Accordingly, on June 5, 1929, defendant executed before the notary of the Mortgage & Securities Company a series of notes aggregating $10,000, and an act of mortgage to secure them. This mortgage was recorded on June 6th, the same day a mortgage certificate was applied for, and it was issued on June 7th and signed by the recorder of mortgages. The mortgage certificate did not show the mortgage of the Southern Casualty Company for $17,500, and the evidence shows that this was due to the fact that it was not entered on the index card in the mortgage office.

Neither the notary nor the Mortgage & Securities Company had any knowledge of the mortgage for $17,500, and defendant did not disclose it to them.

There was some delay, during which the Canal Bank was demanding payment of its note, occasioned by the necessity of making certain cancellations.

On June 26th, the notary paid the $10,-000 note held by the Canal Bank and, before surrendering it, the bank marked the note "paid." An act of cancellation of the mortgage was then passed in the same notary's office on June 29th, and on July 15th in-

scription of the mortgage was canceled from the records of the mortgage office.

It is clear, under this state of facts, that, in view of the cancellation of the first mortgage of $10,000, the $17,500 mortgage became the first mortgage on the property, and that the new $10,000 mortgage executed by defendant to the Mortgage & Securities Company became a second mortgage.

The Southern Casualty Company filed foreclosure proceedings against defendant on the mortgage note for $17,500. The property was advertised for sale, and on December 11, 1930, was adjudicated to the receivers of the Southern Casualty Company.

However, before the formal deed was executed, Augustus G. Williams, former recorder of mortgages, the Fidelity Deposit Company of Maryland, surety on his official bond, and the defendant, Ross, intervened in the suit, for the purpose of enjoining the execution of the deed by the sheriff, and for the further purpose of restoring the "status quo" as existing prior to the cancellation of the vendor's lien and mortgage, and annulling the cancellation and reinstating the former mortgage, and also annulling and setting aside the sale.

Defendants filed an exception of no cause of action which was referred to the merits and, in the decision on the merits, the court refused the injunction and rejected the demands of interveners.

Interveners then applied to this court for writs of mandamus and certiorari, which were denied January 23, 1931, for the reason that the judgment of the civil district court was correct.

See No. 31067 of the docket of this court, entitled Southern Casualty Company v. James B. Ross.

Thereafter, the sheriff proceeded to execute the act of sale on January 26, 1931, which was duly recorded, and on September 22, 1931, the Southern Casualty Company, through ·its receivers, sold the property to Mrs. Agnes Marsh Guthrie, wife of Clifford F. Favrot, and this act was registered in the conveyance office of the parish of Orleans.

On January 25, 1932, the interveners took a devolutive appeal from the judgment rendered. against them.

1. This court has held uniformly, in the interest of security and certainty óf titles, that the records kept by law are conclusive and· knowledge acquired dehors the public records is immaterial. McDuffie v. Walker, 125 La. 152, 51 So. 100; Graham v. Murphy, 126 La. 210, 52 So. 277; Riggs Cypress Co. v. Albert Hanson Lumber Company, 127 La. 455, 53 So. 700; Grant Timber & Mfg. Co. v. Gray, 129 La. 758, 56 So. 663; Lewis v. Manson, 132 La. 817, 61 So. 835; Parent v. First Nat. Bank, 135 La. 262, 65 So. 233; Mouton v. Southern Saw Mill Co., 138 La. 818, 70 So. 813; Bell v. Saunders, 139 ·La. 1049, 72 So. 727; Soniat v. Whitmer, 141 La. 239, 74 So. 916, etc.

As is well said in the early case of Adle v. Anty, 5 La. Ann. 631, 633: "It is not what the recorder ought to or might have done, but what he does, that we must look to in order to ascertain the rights of parties. If the public record is considered as the sole standard by which those rights are to be determined, the community can always know with certainty what conventional or judicial mortgages exist on a man's property, and can deal with him securely. But if instead of looking to the record, courts let in proof of unsuccessful diligence of the creditor 'to get his mortgage recorded, and the remissness or fault of the public officer, all the security and certainty contemplated by our registry system is gone, and a wide door is opened to injustice and frauds. The remedy of the creditor who loses his rights by want of proper inscription is against the officer, in damages. His fault or fraud is not to be visited upon the public. See Civil Code, arts. 3313, 3333, 3357. etc. Succession of Falconer, 4 Rob. 5; Hyde v. Bennett, 2 La. Ann. 800; Chige v. Landreaux, 2 La. Ann. 606."

The registry system of this state is based upon the articles of the Civil Code, express law, and equitable considerations, such as restoring the "status quo" in this case, cannot be urged or considered by this court. Civ. Code, art. 21.

If we had the proper parties before us, and if restoration of the "status quo" was possible, we could not even then take an equitable view of the case, without sweeping away our long-established and time-honored registry system, which has been founded upon the highest considerations of public policy.

Our conclusion is that when this first mortgage was canceled, the plaintiff had a right to foreclose on its mortgage, which then assumed first rank.

Judgment affirmed.

O'NIELL, C. J., and ST. PAUL, J., absent.